FILED

AUG 2 7 2012

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**
**SAN DIEGO DIVISION**

|  |  |
|---|---|
| **UNITED STATES COMMODITY FUTURES TRADING COMMISSION,** | ) ) ) |
|  | ) Civil Action No. |
| **Plaintiff,** | ) 3:11-cv-02743-WQH-BGS ) ) |
| **v.** | ) ) ) |
| **CSG COMMODITY SERVICE GROUP, a California corporation, and CHARLES STEVEN GOODIE, an individual,** | ) ) ) ) ) ) |
|  | ) ) |
| **Defendants.** | ) ) ) |

**CONSENT ORDER OF PERMANENT INJUNCTION, CIVIL MONETARY PENALTY,**
**AND OTHER EQUITABLE RELIEF AGAINST DEFENDANTS**

## I. INTRODUCTION

On November 23, 2011, the U.S. Commodity Futures Trading
Commission ("CFTC") filed its Complaint for Injunctive Relief,
Civil Monetary Penalties, and Other Equitable Relief [D.E. #1]
in the above-captioned action against defendants CSG Commodity
Service Group ("CSG") and Charles Steven Goodie("Goodie")
(collectively, "Defendants"), in which the CFTC seeks injunctive
and other relief for violations of the Commodity Exchange Act
(the "Act"), 7 U.S.C. §§ 1, *et seq.*, and CFTC Regulations

Consent Order of Permanent Injunction - 1

("Regulations"), 17 C.F.R. §§ 1.1, *et seq.*, committed by Defendants from in or about May 2008 and continuing to March 2011 (the "Relevant Period").

## II.   CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Defendants without a trial on the merits or any further judicial proceedings, Defendants:

1.   Consent to the entry of this Consent Order of Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief Against Defendants (the "Consent Order");

2.   Affirm that they have read and agreed to this Consent Order voluntarily and that no promise, other than as specifically contained herein, or threat has been made by the CFTC or any member, officer, agent, or representative thereof, or by any other person, to induce consent to this Consent Order;

3.   Acknowledge service of the summons and Complaint;

4.   Admit the jurisdiction of this Court over them and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006);

5.   Admit the jurisdiction of the CFTC over the conduct and transactions at issue in this action pursuant to the Act, 7 U.S.C. §§ 1, *et seq.*

Consent Order of Permanent Injunction - 2

6.   Admit that venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2006);

7.   Waive:

a.   Any and all claims that they may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2006) and 28 U.S.C. § 2412 (2006), and/or the rules promulgated by the CFTC in conformity therewith, Part 148 of the Regulations, 17 C.F.R. §§ 148.1, *et seq.* (2011), relating to or arising from this action;

b.   Any and all claims that they may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No.104-121, §§ 201-253, 110 Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to or arising from this action;

c.   Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

d.   Any and all rights of appeal from this action.

8.   Consent to the continued jurisdiction of this Court over them for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other

Consent Order of Permanent Injunction - 3

purpose relevant to this action, even if Defendants now or in the future reside outside the jurisdiction of this Court;

9.   Agree that they will not oppose enforcement of this Consent Order by alleging that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and waive any objection based thereon;

10.   Agree that neither Defendants nor any of their agents or employees under their authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent Order, or creating or tending to create the impression, that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect Defendants': (i) testimonial obligations; or (ii) right to take legal positions in other proceedings to which the CFTC is not a party. Defendants shall undertake all steps necessary to ensure that all of their agents and/or employees under their authority or control understand and comply with this agreement; and

11.   By consenting to the entry of this Consent Order, neither admit nor deny the allegations of the Complaint or the Findings of Fact and Conclusions of Law in this Consent Order, except Defendants admit jurisdiction and venue as set forth in Paragraphs 11-13 in Section III.A of this Consent Order and

admit the factual findings set forth in Paragraphs 14-16, 18, 20, 22, 23, 25, 28, and 29 in Sections III.B and III.C of this Consent Order, consistent with their Answer to the Complaint [D.E. #8].  Defendants agree and intend that all of the allegations contained in the Complaint and all of the Findings of Fact and Conclusions of Law contained in this Consent Order shall be taken as true and correct and be given preclusive effect, without further proof, in the course of: (i) any current or subsequent bankruptcy proceeding filed by, on behalf of, or against either Defendant; (ii) any proceeding pursuant to Section 8a of the Act, 7 U.S.C. § 12a (2006), and/or Part 3 of the Regulations, 17 C.F.R. §§ 3.1, *et seq.* (2011); and/or (iii) any proceeding to enforce the terms of this Consent Order.

12.  Agree to provide immediate notice to this Court and the CFTC, by certified mail and in the manner required by Part VI of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against them whether inside or outside of the United States; and

13.  Agree that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against them in any other proceeding.

Consent Order of Permanent Injunction - 5

### III.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay.  The Court therefore makes the following Findings of Fact and Conclusions of Law, and directs the entry of a permanent injunction, civil monetary penalty, and other equitable relief, pursuant to § 6c of the Act, 7 U.S.C. § 13a-1 (2006), as set forth herein.

### A. Findings of Fact

14.   Plaintiff U.S. Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with the administration and enforcement of the Act, 7 U.S.C. §§ 1, *et seq.*, and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1, *et seq.*

15.   Defendant CSG Commodity Service Group is a California corporation with its principal office at 6755 Mira Mesa Blvd. STE. 123-188, San Diego, CA 92121.  CSG was formed on May 14, 2004, and its rights and privileges as a business entity were subsequently suspended.  CSG registered in 2004 with the CFTC as an Introducing Broker and with the Securities Exchange Commission ("SEC") as a Notice Broker Dealer.  CSG withdrew both registrations in 2005, was not registered in any capacity with

the NFA or SEC during the Relevant Period, and has no current
registration status with the CFTC or SEC.

16.   Defendant Charles Steven Goodie is an individual who
resides in San Diego, CA.  Goodie is (and was during the
Relevant Period) CSG's sole principal, officer, employee and
agent.  Goodie was registered with the CFTC in various
capacities from 1984 until 2007.  Goodie was not registered with
the CFTC during the Relevant Period and has no current
registration status with the CFTC.

17.   During the Relevant Period, CSG, an unregistered
commodity pool operator ("CPO") and Goodie, an unregistered
Associated Person ("AP") of a CPO who acted individually and in
his capacity as the sole principal, officer, and employee of
CSG, solicited and accepted at least $494,000 from members of
the public in connection with Defendants' operation of a
commodity pool, (the "Pool").

18.   Defendants solicited prospective pool participants
telling them that their funds would be used to trade futures
contracts in silver, copper, natural gas, and oil, and that the
profits from that trading would be shared by the pool
participants.

19.   As part of his solicitation of prospective pool
participants, Goodie touted his ability to profitably trade
futures contracts.  For example, in May 2008 Goodie told at

least one prospective pool participant that Goodie had been very successful trading futures contracts and that his personal trading account was, at that time, showing a profit of close to $500,000. This statement was false. An examination of Goodie's domestic trading activity reveals no activity in 2008 until June 2008, when Goodie opened an account in the name of CSG. Moreover, Goodie traded this account for only three months and suffered total net losses of approximately $81,700.

20. As a result of Defendants' solicitations, at least 15 individuals sent funds to Defendants for investment in the Pool. These funds were received by Defendants by checks in the mail and by wire transfer.

21. These funds totaled at least $494,000.

22. Rather than trade all of the funds received from pool participants, Defendants used some of these funds to pay Goodie's personal expenses. In fact, Goodie confessed to some of the pool participants that he had spent pool participant funds on personal expenses rather than trade them as promised.

23. In addition, Defendants provided at least some pool participants with false account statements.

24. These statements falsely represented that Defendants had profitably traded the pool participants' funds in futures contracts in copper, silver, natural gas, and oil. Defendants

never traded the contracts as represented in the account statements.

25. Furthermore, the limited amount of actual trading conducted by Defendants during the Relevant Period resulted in net losses.

26. In addition, the account statements stated that "margin calls" resulting from Defendants' purported futures trading had been deducted from pool participants' individual investments. These representations were false because the Pool never incurred "margin calls" as represented.

27. Defendants sent these false statements to pool participants by mail, email and/or facsimile. In reliance on these false statements, pool participants maintained and/or increased their investments in the Pool.

28. Further, Defendants did not provide pool participants with a Disclosure Document regarding the operation of the Pool.

29. In or about the fall of 2010, Defendants informed pool participants that Defendants were closing the Pool and would return the pool participants' funds along with substantial profits that had been reported in the account statements sent to pool participants.

30. Despite this and subsequent promises to repay the pool participants, Defendants have not done so.

Consent Order of Permanent Injunction - 9

## B. Conclusions of Law

### i. Jurisdiction and Venue

31.   This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), which provides that whenever it shall appear to the CFTC that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the CFTC may bring an action in the proper district court of the United States against such person to enjoin such act or practice, or to enforce compliance with the Act, or any rule, regulation or order thereunder.

32.   This Court has personal jurisdiction over Defendants, who acknowledge service of the summons and Complaint and consent to the Court's jurisdiction over them.

33.   Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2006), in that Defendants are found in, inhabit, and/or transacted business in this district, and the acts and practices in violation of the Act and Regulations have occurred, are occurring, or are about to occur within this district, among other places.

### ii. Fraud in connection with commodity futures contracts

34.   Sections 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. §§ 6b(a)(1)(A)-(C) (Supp. III 2009), provide, in relevant part, that it is unlawful

> for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person… (A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, in the case of paragraph (2), with the other person.

35.   As described above, from at least May 2008 through March 2011, in connection with the making of futures contracts made or to be made for or on behalf of other persons, Defendants violated Sections 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. §§ 6b(a)(1)(A)-(C) (Supp. III 2009), by, among other things, willfully or with reckless disregard for the truth (i) misappropriating pool participant funds, (ii) fraudulently soliciting pool participants or prospective pool participants, and (iii) making, causing to be made, and distributing reports

and statements to pool participants or prospective pool participants that contained false information.

### iii. Fraud by a Commodity Pool Operator

36.   Section 1a(5) of the Act, 7 U.S.C. § 1a(5) (2006), defines a Commodity Pool Operator ("CPO") as:

> any person engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading any commodity for future delivery . . . .

37.   Regulation 1.3(aa)(3), 17 C.F.R. § 1.3(aa)(3) (2011), defines an Associated Person ("AP") of a CPO as a person who solicits funds for participation in a commodity pool.

38.   Section 4o(1) of the Act, 7 U.S.C. § 6o(1) (2006), prohibits CPOs and APs of CPOs from using the mails or any other means of interstate commerce to:

> (A) employ any device, scheme or artifice to defraud any client or participant or prospective client or participant; or (B) engage in any transaction, practice or course of business which operates as a fraud or deceit upon any client or participant or prospective participant.

39.   As described above, from at least May 2008 through March 2011, CSG acted as a CPO and Goodie acted as an AP of CSG by soliciting, accepting, or receiving funds from others while engaged in a business that is of the nature of an investment

Consent Order of Permanent Injunction - 12

trust, syndicate, or similar form of enterprise, for the purpose of, among other things, trading in commodities for future delivery.

40. CSG and its AP, Goodie, violated Section 4o(1) of the Act, 7 U.S.C. § 6o(1) (2006), in that they employed a device, scheme, or artifice to defraud pool participants and prospective pool participants and engaged in transactions, practices, and a course of business which operated as a fraud or deceit upon the pool participants or prospective pool participants. The fraudulent acts include (i) misappropriating pool participant funds, (ii) fraudulently soliciting pool participants or prospective pool participants, and (iii) making, causing to be made, and distributing reports and statements to pool participants or prospective pool participants that contained false information.

### iv. Failure to register as a Commodity Pool Operator

41. Section 4m(1) of the Act, 7 U.S.C § 6m(1) (2006), provides that it is unlawful for any CPO, unless registered, to make use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CPO.

42. As described above, from at least May 2008 through March 2011, CSG acted as a CPO. Furthermore, CSG, by and through its employees, agents, and control persons, used the

Consent Order of Permanent Injunction - 13

mails or instrumentalities of interstate commerce in or in connection with a commodity pool as a CPO while failing to register as a CPO, in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2006).

### v. Failure to register as an Associated Person

43.     Section 4k(2) of the Act, 7 U.S.C. § 6k(2) (2006), prohibits persons from being associated with a CPO as a partner, officer, employee, consultant, or agent (or any person occupying a similar status or performing similar functions), in any capacity that involves (i) the solicitation of funds, securities, or property for participation in a commodity pool, or (ii) the supervision of any person or persons so engaged, unless such person is registered. This section further prohibits CPOs from permitting such persons to become or remain associated with the CPO if the CPO knew or should have known that such persons were not so registered.

44.     Regulation 3.12, 17 C.F.R. § 3.12 (2011), prohibits a person from being associated with a CPO unless the person is registered as an AP of the sponsoring CPO.

45.     As described above, Goodie solicited funds for participation in a commodity pool operated by CSG. Because Goodie was not registered as an AP of CSG, Goodie violated

Consent Order of Permanent Injunction - 14

Section 4k(2) of the Act, 7 U.S.C. § 6k(2) (2006), and Regulation 3.12, 17 C.F.R. § 3.12 (2011).

46.  As described above, CSG, by and through its employees, agents, and control persons, permitted Goodie to become or remain associated with CSG knowing that he was not registered as an AP, in violation of Section 4k(2) of the Act, 7 U.S.C. § 6k(2) (2006).

### vi.  Failure to comply with disclosure requirements

47.  Regulation 4.21, 17 C.F.R. § 4.21 (2011), provides that

> each commodity pool operator registered or required to be registered under the Act must deliver or cause to be delivered to a prospective participant in a pool that it operates or intends to operate a Disclosure Document for the pool prepared in accordance with §§ 4.24 and 4.25 by no later than the time it delivers to the prospective participant a subscription agreement for the pool.

48.  As described above, CSG failed to provide a pool Disclosure Document in the form specified by Regulation 4.21, 17 C.F.R. § 4.21 (2011), to prospective pool participants.

### vii.  Control person and vicarious liability

49.  Goodie controlled CSG, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, CSG's conduct described above that violated the Act and Regulations.  Therefore, pursuant to Section 13(b) of the

Consent Order of Permanent Injunction - 15

Act, 7 U.S.C. § 13c(b) (2006), Goodie is liable for CSG's violations.

50.  The foregoing acts, misrepresentations, omissions, and failures of Goodie described above that violated the Act and Regulations occurred within the scope of his employment, office, or agency with CSG.  Therefore, CSG, as principal of its agent Goodie, is liable for these acts, misrepresentations, omissions, and failures pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), and Regulation 1.2, 17 C.F.R. § 1.2 (2011).

### viii.  Reasonable likelihood of future violations

51.  Unless restrained and enjoined by this Court, there is a reasonable likelihood that Defendants will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

### IV.    ORDER FOR PERMANENT INJUNCTION

**IT IS NOW HEREBY ORDERED THAT:**

52.  Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), Defendants are permanently restrained, enjoined, and prohibited from, directly or indirectly:

    a.  cheating, defrauding, or deceiving, or attempting to cheat, defraud, or deceive other persons, or issuing

Consent Order of Permanent Injunction - 16

any false statements to other persons, in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery;

b.  employing any device, scheme, or artifice to defraud any person or engaging in any transaction, practice, or course of business which operates as a fraud or deceit upon any person in connection with the operation of a commodity pool; and

c.  operating a commodity pool or acting as an associated person of a commodity pool operator without proper registration or an exemption from registration and failing to provide required disclosures to participants or prospective participants in any commodity pool;

in violation of Sections 4b(a)(1)(A)-(C), 4k(2), 4m(1), and/or 4o of the Act, 7 U.S.C. §§ 6b(a)(1)(A)-(C), 6k(2), 6(m)1, and/or 6o, as amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, Title VII (the "Dodd-Frank Act"), §§ 701-774, 124 Stat. 1376 (enacted July 21, 2010), to be codified at 7 U.S.C. §§ 6b(a)(1)(A)-(C), 6k(2), 6(m)1, and 6o, and Regulations 3.12 and 4.21, 17 C.F.R. §§ 3.12 and 4.21 (2011);

Consent Order of Permanent Injunction - 17

53. Defendants are permanently restrained, enjoined, and prohibited from, directly or indirectly:

    a. trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, as amended, to be codified at 7 U.S.C. § 1a);

    b. entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 1.3(hh), 17 C.F.R. § 1.3(hh) (2011)) ("commodity options"), security futures products, and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended, to be codified at 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts"), for their own personal account or for any account in which they have a direct or indirect interest;

    c. having any commodity futures, options on commodity futures, commodity options, security futures products, and/or forex contracts traded on their behalf;

    d. controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures,

commodity options, security futures products, and/or forex contracts;

e.  soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, security futures products, and/or forex contracts;

f.  applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011); and

g.  acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2011)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the CFTC, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011).

## V.    ORDER OF RESTITUTION, CIVIL MONETARY PENALTY, AND OTHER EQUITABLE RELIEF

**IT IS FURTHER ORDERED THAT:**

### A. Restitution

54.   Defendants are hereby jointly and severally liable to pay restitution in the amount of $494,633, plus post-judgment interest (the "Restitution Obligation").  The Restitution Obligation is due on the tenth (10th) business day after entry of this Consent Order.  Should Defendants not satisfy this Restitution Obligation within ten (10) days of the date of entry of this Consent Order, post-judgment interest shall accrue on this Restitution Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961 (2006).

55.   To effect payment by Defendants and distribution of the Restitution Obligation, the Court appoints the National Futures Association ("NFA") as Monitor.  The Monitor shall collect all payments from Defendants and make distributions as set forth below.  Because the Monitor is acting as an officer of the Court in performing these services, which are outside the normal duties of the Monitor and for which it is not being specially compensated, the Monitor shall not be liable for any

action or inaction arising from its appointment as Monitor, other than actions involving fraud.

56.   Defendants shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify Defendants' participants, whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any payments received.

57.   Defendants shall execute any documents necessary to release funds that they have in any repository, bank, investment or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligation.

58.   Defendants shall make Restitution Obligation payments under this Consent Order to the Monitor in the name of the "CSG Commodity Service Group Fund" and shall send such payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, made payable to and sent to the Office of Administration, National Futures Association, 300 S. Riverside Plaza, Suite 1800, Chicago, Illinois 60606, under a cover letter that identifies the paying Defendant and the name and docket number of this proceeding.   The paying Defendant shall simultaneously transmit a copy of the cover letter and the form of payment to the Chief Financial Officer, U.S. Commodity Futures Trading Commission, at the following address:   1155 21st Street, N.W., Washington, DC

20581, and to the Director, Division of Enforcement, at the same address.

59.   The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to Defendants' participants identified by the CFTC or may defer distribution until such time as the Monitor deems appropriate. In the event that the amount of Restitution Obligation payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative cost of making a distribution to eligible participants is impractical, the Monitor may, in its discretion, treat such Restitution Obligation payments as civil monetary penalty payments, which the Monitor shall forward to the CFTC following the instructions for civil monetary penalty payments set forth in Part V.B, below.

60.   The Monitor shall provide the CFTC at the beginning of each calendar year with a report detailing the disbursement of funds to Defendants' participants during the previous year.   The Monitor shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

Consent Order of Permanent Injunction - 22

61.   Nothing herein shall be construed in any way to limit or abridge the rights of any person that exist under federal, state, or common law to assert a claim for recovery against Defendants subject to any offset or credit that Defendants may be entitled to claim under the law governing that person's claim.   The amounts payable to each participant shall not limit the ability of any participant from proving that a greater amount is owed from Defendants or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any participant that exist under state or common law.

62.   Subsequent to the entry of this Consent Order, each Defendant shall provide the CFTC and the Monitor with immediate notice of any filing or compromise and settlement of any private or governmental actions relating to the subject matter of this Consent Order in the manner required by Part VI of this Consent Order.

63.   To the extent that any funds accrue to any U.S. governmental entity, including but not limited to the U.S. Treasury, as a result of the Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth in this Part V of the Consent Order.

Consent Order of Permanent Injunction - 23

64.   Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each participant of Defendants who suffered a loss is explicitly made an intended third-party beneficiary of this Consent Order and may seek to enforce obedience of this Consent Order to obtain satisfaction of any portion of the restitution that has not been paid by Defendants to ensure continued compliance with any provision of this Consent Order and to hold Defendants in contempt for any violations of any provision of this Consent Order.

## B. Civil Monetary Penalty

65.   Pursuant to Section 6c(d) of the Act, 7 U.S.C. § 13a-1(d) (2006), and Regulation 143.8(a)(1), 17 C.F.R. § 143.8(a)(1) (2011), this Court may impose an order directing Defendants to pay a civil monetary penalty ("CMP"), to be assessed by the Court, in amounts of not more than the greater of (1) triple the monetary gain to Defendants for each violation of the Act and Regulations; or (2) $130,000 for each violation of the Act and Regulations occurring from October 23, 2004 through October 22, 2008, and $140,000 for each violation of the Act and Regulations occurring on or after October 23, 2008.

66.   In determining the amount of the CMP to be paid by Defendants, the Court has considered the egregiousness, duration, and scope of the fraud and violations of the Act and

Regulations.  A proper showing having been made, Defendants are hereby jointly and severally liable to pay a CMP in the amount of $700,000.  This CMP shall be paid within ten (10) days of the date of entry of this Consent Order.  Should Defendants not satisfy this CMP within ten (10) days of the date of entry of this Consent Order, post-judgment interest shall accrue on this CMP beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961 (2006).

67.  Defendants shall pay the CMP by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made by other than electronic funds transfer, the payment shall be made payable to the United States Commodity Futures Trading Commission and sent to the address below:

  United States Commodity Futures Trading Commission
  Division of Enforcement
  ATTN:  Accounts Receivables – AMZ 340
  E-mail Box:  9-AMC-AMZ-AR-CFTC
  DOT/FAA/MMAC
  6500 S. MacArthur Blvd.
  Oklahoma City, OK 73169
  Telephone: (405) 954-5644

If the payment is to be made by electronic funds transfer, Defendants shall contact Linda Zurhorst, or her successor, at the above address for payment instructions and fully comply with

those instructions.  Defendants shall accompany the payment of the CMP with a cover letter that identifies the paying Defendant and the name and docket number of this proceeding.  Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, United States Commodity Futures Trading Commission, Three Lafayette Center, 1155 21st Street, N.W., Washington, DC 20581, and to the Director, Division of Enforcement, at the same address.

### C. Provisions Related to Monetary Sanctions

68.  Partial Satisfaction:  Any acceptance by the CFTC and/or Monitor of partial payment of the Restitution Obligation or CMP ordered in this Consent Order shall not be deemed a waiver of Defendants' requirement to make further payments pursuant to this Consent Order or a waiver of the CFTC's right to seek to compel payment of any remaining balance.

### D. Cooperation

69.  Defendants shall continue to cooperate fully and expeditiously with the CFTC, including the CFTC's Division of Enforcement, and any government agency with respect to this action, and in any investigation, civil litigation, or administrative matter related to the subject matter of this action or any current or future CFTC investigation related thereto.  As part of such cooperation, Defendants shall provide

any requested information relating to their financial status, including but not limited to, income and earnings, assets, financial statements, asset transfers, and tax returns.

## VI.     MISCELLANEOUS PROVISIONS

**IT IS FURTHER ORDERED THAT:**

70. <u>Notice</u>:  All notices required to be given by any provision in this Consent Order shall be sent by email, facsimile, or certified mail, return receipt requested, as follows:

Notice to CFTC:

Matthew Elkan
Division of Enforcement
U.S. Commodity Futures Trading Commission
1155 21st Street NW
Washington, DC 20581
(202) 418-5937 (facsimile)
melkan@cftc.gov

All such notices to the CFTC shall reference the name and docket number of this action.  Notice to Defendants shall be as follows:

Charles Steven Goodie
c/o Jeffry M. Henderson, Esquire
Henderson & Lyman
175 West Jackson Boulevard
Suite 240
Chicago, Illinois 60604
(312) 986-6961 (facsimile)
jmh@henderson-lyman.com

71. <u>Change of Address/Phone</u>:  Until such time as Defendants satisfy in full their Restitution Obligation and CMP

Consent Order of Permanent Injunction - 27

as set forth in this Consent Order, Defendants shall provide written notice to the CFTC of any change to their telephone number(s) and/or address(es) within ten (10) calendar days thereof.

72. <u>Entire Agreements and Amendments</u>: This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date. Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless: (1) reduced to writing; (2) signed by all parties hereto; and (3) approved by order of this Court.

73. <u>Binding Effect</u>: The injunctive and equitable relief provisions of this Consent Order shall be binding upon Defendants, upon any person under their authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendants.

74. <u>Invalidation</u>: If any provision of this Consent Order or if the application of any provisions or circumstances is held invalid, then the remainder of this Consent Order and the application of the provisions to any other person or circumstance shall not be affected by the holding.

75. <u>Waiver</u>: The failure of any party to this Consent Order or of any participant at any time or times to require

performance of any provision hereof shall in no manner affect the right of such party at a later time to enforce the same or any other provision of this Consent Order.  No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

76.  Authority:  Goodie hereby warrants that he is/was the sole owner of CSG, that this Consent Order has been duly authorized by CSG, and that he has been duly empowered to sign and submit it on behalf of CSG.

77.  Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this case to assure compliance with this Consent Order and for all other purposes related to this action.

78.  Enforceability:  Defendants understand that the terms of this Consent Order are enforceable through contempt proceedings, and that, in any such proceedings they may not challenge the validity of this Consent Order.

79.  Counterparts and Facsimile Execution:  This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties and delivered (by facsimile or otherwise) to the

other party, it being understood that all parties need not sign the same counterpart.  Any counterpart or other signature to this agreement that is delivered by facsimile or otherwise shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this *Consent Order of Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief Against Defendants.*

**ORDERED AND ADJUDGED.**

**DONE AND ORDERED** at San Diego, California, this **23** day of _____, 2012.

_____
HONORABLE WILLIAM Q. HAYES
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF CALIFORNIA

Consent Order of Permanent Injunction - 30